## AGREEMENT ON SECURITY

## RECITALS

A.      GRACE OCEAN PRIVATE LIMITED ("Owner"), a corporation organized and existing under the laws of Singapore with its registered office in Singapore, was at all relevant times the registered owner of the M/V DALI (IMO No. 9697428) ("the Vessel").

B.      SYNERGY MARINE PTE LTD. ("Operator" also known as "Manager" for this Agreement), a corporation organized and existing under the laws of Singapore with its registered office in Singapore, was at all relevant times responsible for the operation of the Vessel.

C.      The United States of America ("United States" or "U.S.") asserts that the Vessel is subject to the Ports and Waterways Safety Act ("PWSA"); that the Vessel violated the PWSA, 46 U.S.C. § 70034, 70036(a), 70036(b), and the regulations thereunder, including the requirement to immediately notify the Coast Guard of hazardous conditions, 33 C.F.R. § 160.216 (the "Alleged Violations"); and that a U.S. District Court may assess criminal or civil penalties against the Vessel *in rem* and criminal or civil penalties against its Owner and/or Manager *in personam*.

D.      The District Commander, Coast Guard Fifth District, acting on behalf of the United States, intends to request that U.S. Customs and Border Protection ("CBP") withhold the Vessel's departure clearance to sail foreign after departing the Port of Norfolk until the Vessel provides security as authorized by 46 U.S.C. § 70036(f).

E.      The Owner, Manager, and the United States, as parties to this Agreement, desire to arrange for security to be posted to secure the performance of this Agreement and in order for Vessel's departure clearance to sail foreign be granted.

## AGREEMENT

This Agreement in its entirety constitutes surety satisfactory to the Secretary of Homeland Security ("Secretary") per 46 U.S.C. § 70036(f).  As consideration for surety satisfactory to the Secretary for the release of the Vessel, the undersigned parties agree as follows:

1.  Owner and Manager shall jointly post a bond in the amount of THREE MILLION United States Dollars (USD), ($3,000,000.00) as security for any adjudicated potential fines or penalties for Alleged Violations, and to ensure performance of this Agreement.  The Surety Bond shall be posted prior to the Vessel's departure from the United States, and delivered to the U.S. Coast Guard, to the attention of Lieutenant Larissa Tiller (dl), Eighth Coast Guard District, 500 Poydras Street, New Orleans, LA 70130.

When the U. S. Coast Guard receives the Surety Bond, and an executed copy of this document, the U. S. Coast Guard will promptly notify CBP that departure clearance of the Vessel to sail foreign may be granted.  The Surety Bond shall be paid out to the United States as provided for in the Surety Bond and as follows:

(a)     Subject to any right of appeal, if a penalty is assessed by a United States court or an authorized administrative body in a civil, criminal, or administrative action against the Vessel *in rem* or its Owner or Manager *in personam* for the Alleged Violations, or violations arising from or relating to the facts of the Alleged Violations, then the net amount of such penalty (or the full amount of the Surety Bond, excluding any interest on that amount, if the penalty is in excess of the Surety Bond) shall be paid to the United States.  The balance amount of the Surety Bond and any interest earned thereon remaining in excess of the amount paid to the United States shall be remitted to Owner and/or Manager.

(b)     If judgment is entered in favor of Owner and Manager in a criminal action, the balance of the amount of the Surety Bond and any interest earned thereon shall be paid to Owner and/or Manager.

(c)     If either the Owner and/or Manager fails to appear as required by this Agreement or fails to waive objections to jurisdiction as required by this Agreement, then the amount of the Surety Bond, excluding any interest earned thereon, shall be paid to the United States.

(d)     If a United States court renders a finding that either the Owner or Manager failed to pay or provide lodging for the crew as required by paragraph 3 of this Agreement, then the amount of the Surety Bond and any interest earned thereon shall be payable to the crew or their agents as directed by the court.

(e)     If a United States court renders a finding that either the Owner or Manager materially breached other obligations contained in this Agreement, then the amount of the Surety Bond and any interest earned thereon shall be payable to the United States in reimbursement for actual expenses required for performance of the aforementioned obligations, in the amount determined by the United States as directed by the court, and is to be paid from the amount of the Surety Bond and any interest earned thereon.

(f)     If a full or partial plea agreement or compromise is reached in a civil, criminal, or administrative action, then payment shall be made in accordance with joint written instructions from the United States and Owner and Manager.

(g)     Any dispute between the United States and Owner or Manager regarding payment under this paragraph shall be submitted to the United States District Court for the District of Maryland.  In any such dispute wherein one party claims a breach of the terms and conditions herein, the party asserting that there has been a breach of the Agreement shall bear the burden of proof.

2.     Owner and Manager agree to facilitate interviews of any officer or crewmember employed by the Owner or Manager at the time such a request is made by the United States. Owner and Manager agree to cooperate with the United States to arrange for testimony of such employed officer or

crewmember before a Grand Jury or other judicial or administrative proceeding arising from the Alleged Violations. In addition, the Owner and Manager will use reasonable efforts to encourage these officers and crewmembers to comply with any validly served subpoenas issued by the United States in carrying out its investigation and in appearing for their scheduled testimony. Owner and Manager will act in good faith in carrying out these obligations.  No disciplinary measures or legal proceedings or any other retaliatory actions will be instituted by the Owner and/or Manager or any agent of the Owner and/or Manager of the Vessel against any officer or crewmember or other employee as a result of the officer's or crewmember's or other employee's cooperation with the United States.  No efforts will be undertaken to retaliate against the officers or crewmembers or other employees for their cooperation, either now or at any time in the future, and the Owner and Manager will make reasonable efforts to prevent third parties from the doing the same.  The United States agrees that it will provide reasonable notice of its need for these officers and crewmembers to be present so that Owner and Manager may arrange for substitute officers and crewmembers.

3.       At the request of the U.S. Coast Guard acting on behalf of the United States and except for the limited purpose stated in subpart (d) of this paragraph ("Paragraph 3"), the following ship's officers and crewmembers shall remain within the jurisdiction of the U.S. District Court – District of Maryland pursuant to the terms set forth within the below subparts.

(a)      The ship's officers and crewmembers pertaining to this paragraph are:





(b)    The Owner and Manager(s) agree to provide reasonable individual lodging, a meal and incidentals allowance of $69.00 USD per day, and health care coverage to the aforementioned ship's officers and crewmembers of the Vessel while in the United States, regardless of the current employment status of the aforementioned ship's officers and crewmembers, until the United States, through its attorney responsible for the pending criminal investigation, advises that their presence is no longer necessary.

If any officer or crewmember is authorized to depart the United States due to personal reasons (e.g., a family emergency), then the Owner and Manager will not be responsible for lodging and per diem while the officer or crewmember is not present in the United States but will resume payment as soon as the individual returns.

If lodging secured for a crewmember includes a functional kitchen facility or Owner and/or Manager ensure the provision of lunch and dinner to each crew member on a daily basis, the required meal allowance for such crewmember will be reduced to $48.00 per day. A "functional kitchen facility" means a full kitchen, which includes a refrigerator (not merely a mini fridge), stove, microwave, and cookware (including pots and pans, cutlery, dishes, and other reasonable cooking utensils), in such a space that can accommodate preparation of a full meal.

Owner and Manager further agree that the lodging provided to the ████████████ ██████████████████████████████ ████████ will be in a different lodging location from the remainder of the above-described crewmembers.

Owner and Manager agree to immediately notify the United States, through its attorney responsible for the pending criminal investigation, as well as Commander Karen Lee, U.S. Coast Guard, of the name, address, and telephone number of the location where each ship's officer and crewmember resides. Owner and Manager agree to provide notice of this Agreement and its provisions to all affected ship's officers and crewmembers.

(c)     If at any time the Coast Guard finds that the lodging of any officer or crewmember is substandard, unsanitary, or otherwise not habitable, the Owner and Manager agree to modify those arrangements to the satisfaction of the Coast Guard. The United States recognizes that the ship's officers and crew covered by this Agreement are represented by counsel and therefore agrees that any welfare checks conducted by the Coast Guard will be limited to ensuring the welfare of the ship's officers and crew, the habitability of their lodging, and payment of wages. The U.S. Coast Guard agrees that neither the Coast Guard nor any agents or attorneys representing the United States will discuss any aspects of the United States' investigation into the Alleged Violations or other potential violations of law with the ship's officers or crew outside the presence of their counsel.

(d)     Owner and Manager agree that the Vessel shall not depart to sail foreign until the aforementioned ship's officers and crewmembers of the Vessel have been granted immigration status necessary to enable them to remain in the United States commensurate with the duration of this Agreement. Owner and Manager agree that no such ship's officer or crewmember will be allowed to remain aboard the Vessel when it departs from the United States to sail foreign unless the United States,

through its attorney responsible for the pending criminal investigation, advises Owner or Manager that the ship's officer or crewmember may leave the United States aboard the Vessel. The United States agrees to assist with obtaining necessary immigration status for the ship's officers and crew members subject to this agreement.

It is agreed that the Vessel may sail from Baltimore, Maryland to Norfolk, Virginia after the execution of this Agreement but may not sail foreign from Norfolk, Virginia until all other requirements have been met to the satisfaction of the Secretary. The United States, Owner and Manager agree that the ██████████ shall be permitted to sail with the Vessel from Baltimore, Maryland to Norfolk, Virginia, to facilitate a thorough and safe handover to the Vessel's replacement officers and crewmembers and to ensure the safety of the Vessel. These Vessel officers and crewmembers may remain aboard the ship for up to 3 days while the Vessel is berthed in Norfolk, but then shall return to the jurisdiction of the U.S. District Court – District of Maryland. Owner and Manager agree to pay for and provide the U.S. Coast Guard and the attorney responsible for the pending criminal investigation with notice of the officers' and crewmembers' return travel.

The United States, Owner and Manager agree that ██████████ the Chief Engineer on the M/V CEZANNE, shall be permitted to sail on the Cezanne from Norfolk, Virginia to Colombo, Sri Lanka to facilitate a thorough and safe handover to the Cezanne's replacement chief engineer. Upon his arrival in Sri Lanka, the Owner and Manager agree to pay and arrange for Chief Engineer ██████████ return to Baltimore where he will subject to the terms of this agreement. Owner and Manager agree to provide the U.S. Coast Guard and the attorney responsible for the pending criminal investigation with notice of Chief Engineer ██████████ return travel.

Owner and Manager agree to continue to employ and to pay total wages in a timely manner and in a manner consistent with any applicable collective bargaining agreements or employee contracts until the United States, through its attorney responsible for the pending criminal investigation, advises that their presence is no longer necessary, except that the Owner and Operator will not be required to employ or pay wages for any ship's officer or crewmember listed in subpart (a) who is convicted of a crime from and related to the facts of the Alleged Violations. "Total wages" as used in this paragraph includes the total wage of the crewmember contracted for and anticipated, including guaranteed overtime.

After being advised by the United States, through its attorney responsible for the pending criminal investigation, that the presence of an aforementioned ship's officer or crewmember is no longer necessary, Owner and Manager(s) will repatriate the ship's officer or crewmember to his home country, or to another port so that the ship's officer or crewmember may complete his employment contract, unless otherwise agreed or ordered by a court of competent jurisdiction.

(d)     The United States, by and through its attorney, agrees to provide written notice to counsel for the Owner and Manager(s) when a determination is made that a particular ship's officer or crewmember is no longer necessary. Upon receipt of such notice, the Owner and Manager(s) will have 3 business days in which to either lodge an objection to the release or make travel arrangements. If an objection is lodged, then the ship's officer or crewmember will continue to remain in the United States with all the benefits (e.g., wages, lodging, per diem, etc.) as are being provided to the other remaining officers and crewmembers.

(e)     The requirements of the Owner and Manager(s) set forth in the entirety of Paragraph 3 and its subparts shall continue until repatriation after the latter of the following: (i) all related cases are declined; (ii) depositions are taken in accordance with Rule of Criminal Procedure 15 after indictments or information have been returned and the United States, through its attorney responsible for the pending

8

criminal investigation, advises that a witness's presence is no longer necessary; or (iii) judgment has been entered and sentencing is complete on all related cases. Owner and Manager(s) will act in good faith in carrying out these obligations.

4.      The United States and the Owner and Manager agree to take reasonable measures to expedite the investigation of the Alleged Violations as well as the timely resolution of any subsequent proceedings. The parties further agree to act in good faith in carrying out their respective obligations under this Agreement.

5.      The United States agrees that the Owner and Manager cannot exercise complete control over the ship's officers and crewmembers of the Vessel and, therefore, Owner's and Manager's obligations in respect to ensuring any ship's officer or crewmember of the Vessel remains within or returns to the jurisdiction of the U. S. District Court - District of Maryland shall be limited to:

(a) requesting such ship's officers and crewmembers of the Vessel to surrender their passports to a third-party agent of the Owner or Manager(s) for safe keeping;

(b) requesting such ship's officers and crewmembers of the Vessel to remain within the jurisdiction of the U. S. District Court – District of Maryland;

(c) providing such ship's officers and crewmembers of the Vessel with reasonable lodging, a meal allowance and health care (including mental health care) coverage as provided in this Agreement; and

(d) providing such ship's officers and crewmembers of the Vessel with reasonable transportation within the jurisdictions of the U. S. District Court – District of Maryland, including transportation to all meetings with their attorneys, law enforcement personnel, and attorneys for the United States.

If such a ship's officer or crewmember refuses or fails to surrender his passport to Owner or Manager(s) as referenced above, then Owner and Manager(s) shall immediately provide written notice

9

to the United States, through both its attorney responsible for the pending criminal investigation as well as Commander Karen Lee, U.S. Coast Guard. If at any time any such ship's officer or crewmember requests the return of his passport by Owner or Manager(s), then Owner or Manager(s) shall provide written notice to the United States, through both its attorney responsible for the pending criminal investigation, as well as Commander Karen Lee, at least 72 hours before returning the passport to the ship's officer or crewmember. Regarding such ship's officers and crewmembers of the Vessel, Owner and Manager(s) shall have no further responsibility or obligations to the U.S. Coast Guard other than those stated herein, except as otherwise provided by law or regulation.

6.     The obligations of the Owner and Manager set forth herein with respect to the specifically aforementioned ship's officers and crewmembers of the Vessel are subject to all rights of each ship's officer and crewmember as may be asserted by the ship's officer or crewmember or on their behalf by their respective attorney(s).

7.     Nothing in this Agreement is to be deemed as binding on non-parties to this Agreement. In particular, for each ship's officer and crewmember who may be served with a federal Grand Jury, deposition, or trial subpoena or material witness warrant and who is required to reside within the jurisdictions of the U. S. District Court – District of Maryland pursuant to this Agreement, their rights pursuant to 18 U.S.C. § 3144, F.R.Crim.P. Rule 15 and other federal laws are specifically preserved.

8.     Owner and Manager also agree to accept service of and comply with any and all subpoenas for records issued by the United States to Owner and Manager and, upon request, to provide a competent custodian of records at any court proceeding, to include grand jury, motions, and trial, to testify as to the authenticity of any records produced pursuant to the subpoena and steps taken to comply with said subpoena.  The Owner and Manager will pay for the travel to the United States of the relevant

10

records custodian(s) and instruct those records custodians to cooperate with the United States in carrying out its investigation and will act in good faith in carrying out this obligation.

9.      Owner, Manager and the United States agree that the criminal and civil penalty claims of the United States against the Vessel *in rem* shall attach to the Vessel release's security as provided pursuant to the Federal Rules of Civil Procedure, Admiralty, Maritime Claims, Supplemental Rule E(5). In consideration of the Surety Bond, the United States agrees not to cause the arrest, seizure, or attachment of the Vessel, nor the arrest, seizure, or attachment of any other vessel owned, operated, managed, or chartered by the Owner and/or Manager, or their affiliates, for the Alleged Violations, and not to withhold CBP departure clearance of the Vessel, or any other vessel under the management and control of the Owner and/or Manager or their affiliates, on account of the Alleged Violations.

10.      This Agreement is to be binding whether the Vessel be in port or not in port, lost or not lost, and regardless of its condition, and is given without prejudice as to all rights or defenses which the Vessel, Owner and/or Manager may have, none of which is to be regarded as waived, except the Owner and Manager agree to waive any objections to *in personam* jurisdiction over them, and *in rem* jurisdiction over the Vessel, with respect to the potential claims of the United States described above, in the United States court which hears the criminal action.

11.      Owner and Manager represent and warrant that they are covered by the definition of "operator" as that term is defined in 33 C.F.R. § 160.202.

12.      Owner authorizes Joseph Walsh of Collier Walsh Nakazawa LLP, as agent of Owner for this Agreement, to accept service of any correspondence or legal papers relating to the Alleged Violations on behalf of the Owner by email to joe.walsh@cwn-law.com and service@cwn-law.com. The Owner agrees to enter an appearance in any criminal action brought against it by the United States in a United States district court concerning the Alleged Violations or in any civil penalty action brought

against it by the United States in any other forum, and to defend the Vessel from any *in rem* claim arising from or related to the Alleged Violations asserted by the United States against it.

13.    Manager authorizes William R. Bennett, III, Kierstan L. Carlson, Luke M. Reid, and Joseph G. Poluka of Blank Rome LLP, as agents of Manager for this Agreement, to accept service of any correspondence or legal papers relating to the Alleged Violations on behalf of the Manager by email to william.bennett@blankrome.com, kierstan.carlson@blankrome.com, luke.reid@blankrome.com, and joseph.poluka@blankrome.com.  The Manager agrees to enter an appearance in any criminal action brought against it by the United States in a United States district court concerning the Alleged Violations, or in any civil penalty action brought against it by the United States in any other forum, and to defend the Vessel from any *in rem* claim arising from or related to the Alleged Violations asserted by the United States against it.

14.    Nothing in this Agreement constitutes an admission. The United States, Owner, and Manager enter into this Agreement without prejudice as to all of their respective rights or defenses, none of which is to be regarded as waived except as expressly set forth above.

15.    This Agreement may be signed in duplicate originals.

16.    This Agreement remains in effect until all judicial or administrative proceedings arising from and related to the facts of this case have been completed or the surety bond is returned by the United States.

Dated:  18 June 2024            GRACE OCEAN PRIVATE LIMITED, AS OWNER


By:    Joseph A. Walsh II
       COLLIER WALSH NAKAZAWA LLP
       As attorney in fact per authority received 18 June 2024

Dated:  18 June 2024

SYNERGY MARINE PTE LTD.

By:    William R. Bennett, III
       BLANK ROME LLP
       As attorney in fact per authority received 18 June 2024

Dated:  18  June 2024

UNITED STATES OF AMERICA

By:    Elizabeth A. Hutton
       Commander, U.S. Coast Guard
       Fifth Coast Guard District (dl)

13