**BLANK**ROME

125 High Street | Boston, MA 02110-1624
Blankrome.com

| | |
|---|---|
| *Phone:* | *(617) 415-1129* |
| *Fax:* | *(617) 415-1201* |
| *Email:* | *luke.reid@blankrome.com* |

June 15, 2026

**VIA ECF**
Hon. James K. Bredar
U.S. District Judge
U.S. District Court for the District of Maryland
101 W. Lombard Street
Baltimore, MD 21201

      Re:    *U.S. v. Synergy Marine Private Ltd., et al.*, Case No. 1:26-cr-118
             June 16, 2026 Status Conference

Dear Judge Bredar:

On behalf of our clients, Synergy Marine Private Ltd. and Synergy Maritime Private Ltd. (the "Synergy Defendants"), we write in response to the United States' submission concerning scheduling and crew member witness issues to be addressed at the status conference on June 16, 2026.

With respect to scheduling, the Synergy Defendants request that the Court set a trial date in January 2027.  October 1 is too long – it would be nearly three and a half years after the *M/V DALI*'s allision with the Francis Scott Key Bridge.  The NTSB issued its final report seven months ago and the parties in the Limitation Action were scheduled to try the case starting on June 1. There is no reason the trial here should require over a year longer to prepare for than the one in the Limitation Action, which involved the same exact facts. The Synergy Defendants are prepared to proceed to trial expeditiously and request that the Court set an early trial date.

Regardless of the trial date set by the Court and even if the Court declines to set a trial date, the Synergy Defendants intend to move to depose *all M/V DALI* and *M/V SALTORO* crew members remaining in Baltimore pursuant to Rule 15. The United States' letter painted a rosy picture of the Security Agreements. This is an incomplete narrative that fails to explain what these seafarers have had to endure. The Government omitted that the fourteen men[1] covered by the Security Agreements have been required to be away from their children, wives, parents, and other loved ones for extraordinarily long periods of time as a direct result of the Agreements and to facilitate the Government's investigation.  *Four* seafarers have not left the United States since the allision – two of whom were on the ship and away from their families since *October 2023*, and one of whom had been on the ship since *July 2023*.  While some seafarers have been

---

[1] Of the fourteen seafarers subject to the Security Agreements, to our knowledge only eleven are in the United States, as three are currently abroad pursuant to travel letters.

**BLANK**ROME

Hon. James K. Bredar
June 15, 2026
Page 2

permitted to return home *briefly*, they have otherwise been isolated from everything they know – they have been living in hotels in a foreign country unable to work; their skill sets are dwindling; and their livelihoods are in danger. Indeed, some of the seafarers are at risk of losing their licenses because they have gone too long without sailing, while others' career progression has stalled.

Moreover, contrary to the Government's representations, the crew members covered by the Security Agreements effectively are detained. They are not free to travel. By the plain language of the Security Agreements, they must remain within this judicial district – they would need to seek the Government's permission just to travel from Baltimore to Washington, DC. If a crew member were to demand the return of his passport, there would be a 72-hour waiting period for the Government to determine if he is a material witness or for the owner and manager to request a deposition. Moreover, demanding the return of one's passport requires facing the threat of retribution from the Government, which has the power to arrest (not to mention charge) the crew members, which could detrimentally impact their ability to obtain a U.S. visa in the future.

Courts in similar situations have exercised their discretion to order depositions under Rule 15,[2] while others have done so, finding crew members to be "functionally detained."[3] In *U.S. v. Dalnave Navigation*, the Court ordered Rule 15 depositions to be taken within weeks of its decision, observing:

> The Material Witnesses have been in the country against their will for over six months, with little end in sight. They have done nothing wrong. They are charged with no crimes. Their families ache for their return, but because the Government retains their passports, they are precluded from leaving the country. Enough is enough.

---

[2]*See, e.g.*, *U.S. v. Dalnave Navigation*, Cr. No. 09-130, 2009 WL 743100, at *2 (D.N.J. Mar. 18, 2009) (evaluating the parties' arguments concerning whether crew members seeking Rule 15 depositions were "detained" for purposes of Rule 15(a)(2) and exercising discretionary authority to order depositions).

[3] *In re Material Witness Summons in re Motor Tanker Zao Galaxy*, Case No. 19-xr-90626-KAW-1, 2019 WL 4221727 (N.D. Cal. Sept. 5, 2019) (finding a seafarer "functionally detained" where he had his passport taken from him and was compelled to remain in the district for over six months under the security agreement); *Mercator Lines Ltd. (Sing.) Pte Ltd. v. M/V GAURAV PREM*, Misc. No. 11-00024-CG-C, 2011 WL 10637454 (S.D. Ala. Oct. 25, 2011) (finding a seafarer "functionally detained" under § 3144 where his passport was taken under a security agreement, he was required to stay in a hotel in the district, and could not leave the country, being kept away from his home and family in Thailand); *U.S. v. Maniatis*, No. 07-CR-0024 DLJ, 2007 U.S. Dist. LEXIS 47543, at *3-4 (E.D. Cal. June 20, 2007) (finding that seafarer "while not formally detained under 18 U.S.C. § 3144, is a functionally detained material witness under Rule 15. Petitioner's passport has been taken from him and he has been compelled to remain in the United States pending trial in this matter" and noting "[r]equiring Petitioner to remain in the United States for at least another three months ***would not be in the interests of justice.***") (emphasis added).

BLANKROME

Hon. James K. Bredar
June 15, 2026
Page 3

The seafarers from *M/V DALI* and *M/V SALTORO* have been in the United States at the request of the Government for exponentially longer than the crew members in *Dalnave*. Just as the *Dalnave* court held, enough is enough.  Security agreements are not meant to keep crew detained for years. The *M/V DALI* and *M/V SALTORO* seafarers cooperated fully with the Government's requests consistent with the Security Agreement and it is time for them to go home. The Security Agreements specifically provide a mechanism to preserve the crew members' testimony and allow them to return home while the United States and the Synergy Defendants proceed with the case.  The Agreements contemplate the possibility of Rule 15 depositions at paragraphs 3(e) and 7.  Paragraph 7 explicitly preserves the crew members' rights under Rule 15 and 18 U.S.C. § 3144.

Accordingly, the Synergy Defendants respectfully request that the Court order that all the seafarer witnesses be deposed pursuant to Rule 15, then permitted to return their homes or to sailing, in addition to setting any other pretrial deadlines.

Sincerely,

/s/ Luke M. Reid
Luke M. Reid (Federal Bar No. 31228)

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Alexandra Clark*
Alexandra.Clark@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200

BLANKROME

Hon. James K. Bredar
June 15, 2026
Page 4

Joseph G. Poluka*
Joseph.Poluka@blankrome.com
130 N. 18th Street
Philadelphia, PA 19103
215-569-5500

*Admitted *pro hac vice*

*Counsel for Defendants Synergy Marine Private Ltd. and Synergy Maritime Private Ltd.*