| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **v.** | * | **Case No. 1:26-cr-00118-JKB** |
| **SYNERGY MARINE PRIVATE LTD.,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## GOVERNMENT'S RESPONSE IN OPPOSITION TO CREW PETITIONERS' MOTION FOR AN ORDER DIRECTING THE DEPOSITIONS OF PETITIONERS PURSUANT TO FED. R. CRIM. P. 15

The United States of America, by its undersigned counsel, responds in opposition to the Crew Petitioners' Motion for depositions pursuant to Federal Rule of Criminal Procedure 15 ("Rule 15"). ECF Nos. 61 ("Motion"), 61-1 ("Memorandum"), and ECF No. 61-2 ("Duffy Dec."). *M/V Dali* crewmembers Stephen Jayakumar, Rohit Bisht, and Charles Vaz ("Petitioners") ask the Court to order the United States and the defendants in this matter to depose them promptly, pursuant to Rule 15, and then order their release from detention after the depositions. Motion, p. 1; *see also* ECF No. 61-3 ("Petitioners' Proposed Order"). The Synergy defendants in this matter ("Synergy") do not oppose Petitioners' Motion. ECF No. 64 ("Synergy Response"). As explained below, the Court should deny the Motion because Petitioners are not detained material witnesses and exceptional circumstances do not exist.

## I.      STATEMENT OF FACTS

The Petitioners are Indian citizens who were employed by Synergy as crewmembers on the *M/V Dali* when the vessel hit the Francis Scott Key Bridge ("Key Bridge") on March 26, 2024. Memorandum, p. 1 at ¶¶ 1-2. On April 8, 2026, a grand jury in Maryland returned an indictment

in this matter and, on June 24, 2026, the same grand jury returned a superseding indictment. ECF No. 1 ("Indictment") and ECF No. 50 ("Superseding Indictment"). Trial is scheduled to begin on October 4, 2027. ECF No. 45 ("Scheduling Order").

Approximately three months following the allision, the United States Coast Guard entered into a security agreement with the Synergy and the vessel owner, Grace Ocean Private Limited ("Grace Ocean"). Duffy Dec. at Exhibit A ("Security Agreement"). Petitioners are not a party to the Security Agreement. Motion, p. 2 at ¶ 7. Through the Security Agreement, Synergy "agree[d] to cooperate with the United States to arrange for testimony of such employed officer or crewmember before . . . [a] judicial or administrative proceeding," and to "use reasonable efforts to encourage these officers and crewmembers to comply with any validly served subpoenas issued by the United States in carrying out its investigation and in appearing for their scheduled testimony." Synergy Response, p. 6. The Security Agreement requires Synergy and Grace Ocean to "pay full wages and provide reasonable lodging, a meal/incidental allowance of $69.00 per day, and healthcare to the crewmembers left in this judicial district." Synergy Response, p. 5. In accordance with the Security Agreement, Synergy and Grace Ocean are paying for the Petitioners to stay in a hotel in Baltimore. Synergy has also "paid for all transportation costs for the Crew Petitioners and other covered crew members to attend interviews with DOJ and/or provide Grand Jury testimony, as well as the travel expenses for covered crewmembers who returned home for brief periods and were required to return to the United States to provide Grand Jury testimony." *Id*., p. 6. Petitioners Vaz and Jayakumar left the United States for extended periods (from seven weeks to four months) and have returned to the United States, consistent with the Security Agreement. *Id*., p. 7-8.

Petitioners filed the instant Motion requesting relief as detained material witnesses. Synergy filed a response in support of Petitioners' Motion. ECF No. 64.

## II.    LEGAL STANDARD

### A.  Federal Rule of Criminal Procedure 15(a)

Federal Rule of Criminal Procedure 15(a) authorizes depositions of witnesses in two scenarios: (1) a "party" may move for the deposition of a witness to preserve testimony for trial and a court may grant the motion because of "exceptional circumstances and in the interest of justice"; or (2) a "witness who is detained under 18 U.S.C. § 3144" may request to be deposed and a court may order the release of such a material witness after the deposition.

#### i.    *Rule 15(a)(1) – Exceptional Circumstances and Interest of Justice*

Rule 15(a)(1) authorizes a court to grant a party's motion to depose a prospective witness "because of exceptional circumstances and in the interest of justice."  Fed. R. Crim. P. 15(a)(1). "The district court retains broad discretion in granting a Rule 15(a) motion, and considers the particular circumstances of each case to determine whether the 'exceptional circumstances' requirement has been satisfied." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998) (citation omitted).  The Ninth Circuit, for example, has found the Rule 15 "exceptional circumstances" requirement to be satisfied when two material witnesses who were the sole source of income for their families were detained in custody for over 60 days, unable to work, and could not provide surety for a $1,000 bond.  *Torres-Ruiz v. U.S. Dist. Court for S.D. of Cal.*, 120 F.3d 933, 935-36 (9th Cir. 1997) (viewing this situation as "a tremendous hardship on those families").

#### ii.    *Rule 15(a)(2) – Detained material witness under 18 U.S.C. § 3144*

For Rule 15(a)(2) to apply, the witness must be "detained under 18 U.S.C. § 3144."  Fed. R. Crim. P. 15(a)(2).  Under 18 U.S.C. § 3144, a witness may be detained "if the testimony of a

3

person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena." 18 U.S.C. § 3144. If both of those conditions are met, Section 3144 authorizes a judicial officer to "order the arrest of the person." *Id*. However, a material witness may not be detained under 18 U.S.C. § 3144 "if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice." *Id*. In other words, the framework of 18 U.S.C. § 3144 "provides for the continued detention of a witness where his release would result in a 'failure of justice.'" *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992). That said, at least one court has found that Section 3144 offers an avenue of relief, in the context of Rule 15(a), for witnesses who are being detained in extreme circumstances. *See Torres-Ruiz*, 120 F.3d at 935-36 (describing the "tremendous hardship" as "exactly circumstances such as these for which section 3144 appears to be designed").

Upon petition by a detained material witness, a court may order the release of the witness following a deposition. Fed. R. Crim. P. 15(a)(2). A court's discretion to deny a Rule 15(a)(2) motion is "limited to those instances in which the deposition would not serve as an adequate substitute for the witness' live testimony: that a 'failure of justice' would ensue were the witness released." *Aguilar-Ayala v. Ruiz*, 973 F.2d at 413, 421 (finding that the district court did not abuse its discretion in declining to award attorney's fees because the government was "substantially justified" in its position that Rule 15 did not apply where witnesses were being detained under a statute *other* than 18 U.S.C. § 3144).

The language of 18 U.S.C. § 3144 contemplates formal detention effectuated by a court-ordered arrest. In the Fourth Circuit, "exceptional circumstances" have been found when witnesses are "incarcerated awaiting a trial . . . when their only purpose for being incarcerated is to be witnesses" and that "humanitarian considerations alone demand that something be done to release

4

them from incarceration." *United States v. Rivera*, 859 F.2d 1204, 1206-07 (4th Cir. 1988) (upholding the trial court's finding of exceptional circumstances).

The legislative history of Section 3144 supports the position that Congress intended to provide relief only for material witnesses who are detained in custody. Section 3144 was last modified as part of the Bail Reform Act of 1984. The Senate Report discussing the changes to Section 3144 focuses on the custodial aspect of the changes, noting that they "would permit the judicial officer to order the detention of the witness if there were no conditions of release that would assure his appearance" and that "judicial officers should have the authority to detain material witnesses as to whom no form of conditional release will assure their appearance, in the same manner as provided in Section 3142 for defendants awaiting trial." S. Rep. No. 98-225, as reprinted in 1984 USCCAN 3182 *28. The Committee "stresse[d] that whenever possible, the depositions of such witnesses should be obtained so they may be released from custody." *Id*.

Nevertheless, some courts have determined that certain extreme circumstances constitute functional detention under Section 3144. *See, e.g.*, *In re Mercator Lines Ltd. (Singapore) Pte. Ltd.*, No. CRIM. 11-MJ-00203-N, 2011 WL 10637454, at *5 - *8 (S.D. Ala. Oct. 25, 2011) (finding a material witness to be "functionally detained" due to the severe restrictions on his ability to leave his hotel floor, get food, and walk about without guard supervision); *United States v. Maniatis*, No. 07-CR-0024 DLJ, 2007 U.S. Dist. LEXIS 47543, at *3-*4 (E.D. Cal. June 20, 2007) (finding the witness to be "functionally detained" because his passport was taken from him, he had no income, and he was "compelled" to remain in the United States).

### III. ARGUMENT

#### A. Petitioners Are Not Detained Under Rule 15(a)(2).

Petitioners' Motion is a request for a detained material witness proceeding. They are not a "party" in this matter and they do not have standing to seek relief based on exceptional circumstances under Rule 15(a)(1). For the reasons discussed below, Petitioners are not detained and therefore fail to meet the detention requirement under Rule 15(a)(2).

Rule 15(a)(2) provides, in relevant part, that "[a] witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties." Fed. R. Crim. P. 15(a)(2). Detention under 18 U.S.C. § 3144 occurs if a court orders the arrest of a witness; however, such arrest is only authorized if a court first determines that (1) it appears from a party's affidavit that "the testimony of a person is material in a criminal proceeding" and (2) "it may become impracticable to secure the presence of the person by subpoena." 18 U.S.C. § 3144.

Here, no court has ordered the arrest of the Petitioners; therefore, Petitioners are not "detained under 18 U.S.C. § 3144." Petitioners concede this point, noting that they are "not formally detained under 18 U.S.C. § 3144." Memorandum, p. 10 (referencing other "nearly identical" scenarios). Instead, Petitioners claim that they are "*de facto* detained" under 18 U.S.C. § 3144. *Id*. at 4, ¶ 15. In support of their argument, Petitioners state that they are "required to stay within the jurisdiction of the U.S. District Court—District of Maryland through the Security Agreement"[1] and that they are "not free to leave the United States and return to their homes in

---

[1] Petitioners argue that the Security Agreement's inclusion of the phrase "rights pursuant to 18 U.S.C. § 3144, F.R.Crim.P. Rule 15 and other federal laws are specifically preserved" means the Government has "implicitly recognized" that Petitioners were "detained material witnesses" under Rule 15. Memorandum, p. 9-10. Petitioners' interpretation is not correct. The phrase is a reservation of rights. To interpret it in the manner suggested by Petitioners would mean that the Government also agreed that "all other federal laws" apply to Petitioners. That is not the intent of this provision in the Security Agreement.

India" because they must request approval to leave. Memorandum, p. 9, 15. In support of their arguments, Petitioners reference cases involving witnesses determined to be "functionally detained" for the purposes of Rule 15. *Id*., p. 10 - 16 (citing to, *e.g.*, *Maniatis*, 2007 U.S. Dist. LEXIS 47543 (E.D. Cal. June 21, 2007); *In re Grand Jury Proceedings*, No. 10-mj-57-P-JHR, 2010 U.S. Dist. LEXIS 144359 (D. Me. Apr. 16, 2010) (a.k.a. "*Blow Wind Shipping*"); *In re Mercator Lines Ltd. (Singapore) Pte. Ltd*., No. CRIM. 11-MJ-00203-N, 2011 WL 10637454, (S.D. Ala. Oct. 25, 2011) (a.k.a. "M/V *GUARAV PREM*"); *In re Material Witness Summons in re Motor Tanker Zao Galaxy*, No. 19-XR-90626-KAW-1, 2019 WL 4221727 (N.D. Cal. Sept. 5, 2019); and *Torres-Ruiz*, 120 F.3d 933 (9th Cir. 1997).[2]

Petitioners' circumstances differ from those of the witnesses in the cases they cited. For example, in *Maniatis*, the court found that the witness was "functionally detained" because his passport was taken from him, and—contrary to the instant Petitioners—he was no longer getting paid by his employer and was compelled to remain in the United States. *Maniatis*, 2007 U.S. Dist. LEXIS 47543, at *3 - *4. The witnesses in *Blow Wind*, unlike Petitioners, were subject to a material witness warrant. *In re Grand Jury Proceedings*, 2010 U.S. Dist. LEXIS 144359, at *9. In *M/V GUARAV PREM*, the court found that the witness was "functionally detained," yet unlike Petitioners, the witness in *M/V GUARAV PREM* did not speak English, was guarded round the clock, was unable to leave his hotel floor without permission and supervision, had limited food choices and was not able to go grocery shopping, and was lined up "like prisoners" when allowed to leave to get food. *In re Mercator Lines Ltd.*, 2011 WL 10637454, at *5 - *8. In *Zao Galaxy*,

---

[2] Petitioners also reference *United States v. Dalnave Navigation, No*. CRIM. 09-130, 2009 WL 743100 (D.N.J. Mar. 18, 2009), but the Government does not include that in its analysis because the court did not address the merits of the issue of whether the crew was detained. *Dalnave*, 2009 WL 743100, at *2.

the court found that the witness was "functionally detained" because his passport was taken from him and—unlike Petitioners—he was "compelled to remain" in California by material witness summons and he was unable to return to his home. *Zao Galaxy*, 2019 WL 4221727, at *2 - *3. As noted above, in *Torres-Ruiz*, the witnesses were the sole source of income for their families and—unlike Petitioners—were detained in custody for over 60 days, unable to work, and were unable to provide surety for a $1,000 bond. *Torres-Ruiz*, 120 F.3d 933, 935-36 (finding that situation "a tremendous hardship on those families").

Petitioners are neither actually nor functionally detained. Petitioners have never been arrested and they are not in custody. They are being paid their full wages, as well as lodging, *per diem*, and healthcare while they remain in Baltimore pending trial. They are not under 24-hour guard—they can come and go freely from their hotel. Most importantly, when Petitioners have asked to leave the United States, they have been allowed to leave—the United States returned their passports and worked to secure agreement from Synergy and Grace Ocean that they would pay for Petitioners' round-trip travel between India and the United States. Indeed, two of the three Petitioners have travelled outside of the United States: Petitioner Jayakumar left the country for more than four months to work on a sailing contract from October 2025 to March 2026; and Petitioner Vaz left the United States to travel home for approximately seven weeks in December 2025 and January 2026. Duffy Dec., ¶¶ 19, 30.

Petitioners' counsel also represents other crewmembers (Duffy Dec., p. 1-2) who have traveled since the allision, and without a deposition, to include the second engineer and the third engineer. This further demonstrates that the crewmembers are not *de facto* detained.

### B. "Exceptional Circumstances" Do Not Exist.

The "exceptional circumstances" standard does not apply to Rule 15(a)(2) motions. *See, e.g., United States v. Lai Fa Chen*, 214 F.R.D. 578, 579-80 & n.2 (N.D. Cal. 2003) ("A party seeking to take a Rule 15 deposition must make a showing of 'exceptional circumstances' as required by Rule 15(a)(1). Where a material witness, instead, moves for a Rule 15 deposition, he need not show such 'exceptional circumstances.' Fed. R. Crim. P. 15(a)(2)."). Should the Court nevertheless consider Petitioners' Motion through the lens of Rule 15(a)(1) "exceptional circumstances," Petitioners' Motion would fail.

Rule 15(a)(1) authorizes the Court to grant a party's motion to depose a prospective witness to preserve testimony "because of exceptional circumstances and in the interest of justice." As non-parties, Petitioners do not have standing to move for an order requiring depositions under Rule 15(a)(1). The arguments made by Petitioners and Synergy cannot overcome this hurdle. Even if the Court were to consider their arguments about exceptional circumstances, Petitioners' Motion would still fail for the reasons discussed in III.A. above, including that Petitioners are not in custody and they receive full wages, lodging, healthcare, and a stipend.

### C. Deposing Petitioners and Ordering Their Release Would Result in a Failure of Justice.

A material witness may not be detained under Section 3144 "if the testimony of such witness can adequately be secured by deposition, and **if further detention is not necessary to prevent a failure of justice**." 18 U.S.C. § 3144 (emphasis added). This provision of Section 3144 highlights both the need for a witness to be detained before ordering depositions *and* the necessity for a witness to be present for live testimony at trial. Here, Petitioners are not and have never been detained, as discussed above. And Petitioners' live testimony, rather than multiple videos of depositions, is necessary to secure justice in this matter, where victims include, among others, six

decedents, the City of Baltimore, and the State of Maryland. And if the Court orders the deposition and "release" of the Petitioners, Petitioners will not return to testify for trial. *See* Motion, ¶ 4 (Petitioners "could not agree to the obligation to return to the U.S. for (in-person) trial testimony"; Memorandum, p. 4-5 (stating that Petitioners want to return home to "move on with their lives"); Duffy Dec., ¶ 38 (referencing Petitioners' desire to "leave the United States for good"). Because Petitioners are not detained nor in custody, any "release" ordered by the Court would essentially be a permanent release for Synergy and Grace Ocean from their obligations under the Security Agreement as it relates to the Petitioners.

Petitioners argue that "the Government and the Synergy Defendants are more than well familiar with what may be expected from the Crew Petitioners" because of interviews and prior testimony. Memorandum, p. 20. While the Government and Synergy may be familiar with the Petitioners, a jury is not. Trial will be the first time a jury hears the crew witnesses' manner of speaking and sees their demeanor when responding to questions. A deposition of material witnesses under Rule 15 is an inadequate substitute for their live testimony and admission of a deposition would result in a failure of justice. If depositions were granted as to these three witnesses, then the Court can expect that additional crewmembers will file similar motions. The failure of justice concerns become increasingly aggravated as to each crewmember who would not be available for trial.

The "primary reasons for the law's normal antipathy toward depositions in criminal cases are the factfinder's usual inability to observe the demeanor of deposition witnesses, and the threat that poses to the defendant's Sixth Amendment confrontation rights" and thus such deposition testimony is generally disfavored. *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993) (citing *United States v. Milian-Rodriguez*, 828 F.2d 679, 686 (11th Cir. 1987); *United States v.*

10

*Wilson*, 601 F.2d 95, 97 (3rd Cir. 1979)).  Here, Synergy supports Petitioner's Motion for depositions and release.  Synergy would, presumably, partake in deposing the Petitioners thereby reducing potential concerns about Synergy's Sixth Amendment confrontation rights.  However, they are very much a consideration for defendant Radhakrishnan Karthik Nair ("Nair"), who is still at large and would not be participating in any Rule 15 depositions.  Although Petitioners' Motion does not discuss Nair, the Government would be prejudiced by not having crew witnesses' testimony (either live or by deposition) to use in the prosecution against Nair if he is brought to the United States.  A core concern with granting Petitioner's request is the impact on the finder of fact.  Requiring the crew witnesses to testify live at trial allows the jury to evaluate their demeanor and better evaluate their testimony.  The preference for live testimony weighs against obtaining a deposition of Petitioners to replace their live testimony at trial.  The Petitioners have been served with trial subpoenas and should be expected to testify live at trial.

## IV.     CONCLUSION

For the foregoing reasons, the United States requests that the Court deny the Motion because the requirements for deposition pursuant to Rule 15 have not been met.  Petitioners are not detained material witnesses, and exceptional circumstances do not exist.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:

_____/s/_____
Matthew P. Phelps
(MD Bar No. 17933)
Bijon A. Mostoufi
Kimberly S. Phillips
Assistant United States Attorneys
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
matthew.phelps@usdoj.gov
bijon.mostoufi@usdoj.gov
kimberly.phillips@usdoj.gov

Adam R. F. Gustafson
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division

_____/s/_____
Leigh Rendé
(PA Bar No. 203452)
United States Department of Justice
Environmental Crimes Section
150 M Street, NE
Washington, D.C. 20002
(202) 532-3344
leigh.rende@usdoj.gov

COUNSEL FOR THE UNITED STATES